## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Mauricette Herbecq

v.

Virginia Farm Bureau Ins. Co.
and Progressive Casualty Ins. Co.

June 17, 1987

By JUDGE WILLIAM H. LEDBETTER, JR.

This declaratory judgment action is before the court for disposition upon the motion for declaratory judgment filed by the plaintiff ("Herbecq"), responsive pleadings of the defendants ("Virginia Farm Bureau" and "Progressive Casualty"), oral arguments of counsel heard on May 20, 1987, memoranda of law, and various exhibits tendered as evidence by agreement of counsel.

Herbecq was involved in an automobile accident on Route 208 in Spotsylvania County on June 8, 1986, when a car driven by Christian M. Tack crossed the center line and struck her vehicle. Tack was killed and Herbecq was seriously injured. As a result, Herbecq filed suit for recovery for her personal injuries, and that case (*Herbecq v. Waddy, Administrator of the Estate of Tack*) is set for trial in this court on August 14, 1987.

In this action, Herbecq seeks adjudication of several underinsured motorist coverage issues associated with the accident.

The vehicle operated by Tack was owned by his stepfather and insured under a GEICO policy providing a liability limit of $25,000.00 per person. At the time, the step-

father also owned another vehicle which was insured under a separate GEICO policy with a $25,000.00 limit per person. Apparently, GEICO admits that the first policy is available in the event that Herbecq recovers a judgment against Tack's estate, but it denies that the second policy is available. Herbecq agrees with GEICO's reading of the pertinent Virginia statutes and the GEICO insurance contracts and, at least for purposes of this case, argues that the total amount of coverage applicable to the operation or use of the Tack vehicle is only $25,000.00 (i.e., the amount of the first policy).

Herbecq was driving a vehicle owned by her stepdaughter, as a permissive user, which was insured by Virginia Farm Bureau with UM limits of $25,000.00 per person.

At the time of the accident, Herbecq was a member of the household of her daughter, who owned a vehicle insured by Progressive Casualty with UM limits of $25,000.00 per person.

On the foregoing facts, three questions are presented.

1. *Whether the policies of Virginia Farm Bureau and Progressive Casualty both are available to Herbecq.*

The insurance carriers contend, *inter alia*, that each of their policies is a minimum limits contract and, therefore, not available for underinsurance payment. Their contention is premised upon a reading of Virginia Code Section 38.1-381(b) (now recodified, with some revisions, as § 38.2-2206). That statute provides that no liability policy relating to ownership, maintenance or use of a motor vehicle shall be issued unless it contains provisions or endorsement undertaking to pay the insured all sums which he would be legally entitled to recover as damages from the owner or operator of an uninsured vehicle within limits not less than required by § 46.1-1(8). The statute further states:

> Where such insured contracts for such higher limits, the endorsement therefor shall obligate the insurer to make payment for bodily injury or property damage caused by the operation or use of an underinsured motor vehicle to

the extent that such vehicle is underinsured
. . . .

The insurers argue that to give this section of the statute a fair construction, the court must conclude that the underinsurance provisions of the statute apply "only where the insured contracts for higher limits." Since the insured in this case chose not to contract for higher limits as the statute allows, they assert, the endorsements cannot obligate them to make any underinsured payments.

The argument ignores, or fails to do justice to, the statutory definition of "underinsured."

A motor vehicle is underinsured "when, and to the extent that, the total amount of bodily injury and property damage coverage applicable to the operation or use of the motor vehicle . . . is less than the *total amount* of uninsured motorist coverage afforded *any person* injured as a result of the operation or use of the vehicle."

In this case, it is indisputable that the "total amount" of UM coverage afforded "any person" (Herbecq) as a result of the operation or use of the vehicle is $50,000.00, i.e., Virginia Farm Bureau's $25,000.00 and Progressive Casualty's $25,000.00. Neither insurer claims that its policy does not provide UM coverage for the operation or use of the vehicle. Since both policies afford UM coverage to the operation or use of the vehicle, the limits of both policies must be considered in determining the "total amount" of UM coverage.

To construe § 38.1-381(c) (now § 38.2-2206(B)) otherwise would be to obliterate the clear meaning of the words "total amount . . ." in the statute. Provisions of a statute cannot be read in a vacuum. They must be read together with related provisions, particularly definitional provisions. This is especially true where, as here, a scheme of liability insurance coverage is intended by the legislature.

Therefore, it is the opinion of the court that the total amount of UM coverage afforded Herbecq is $50,000.00.

*2. Whether the amount of coverage available for the alleged tortfeasor's vehicle is less than the total amount of UM coverage available.*

In her motion for declaratory judgment, Herbecq claims that the liability policy applicable to the operation or use of the Tack vehicle is the $25,000.00 GEICO contract written for the specific vehicle which Tack was operating at the time of the accident. Since the total amount of UM coverage is $50,000.00, the plaintiff argues, there is underinsurance to the extent of $25,000.00.

For the reasons stated above, the court would agree with the plaintiff's contention *if* her first premise is correct; i.e., that only $25,000.00 coverage is available for the tortfeasor's vehicle.

This argument rejects the availability of a second GEICO policy issued to Tack's stepfather (with whom Tack resided) with respect to another vehicle. As noted above, GEICO claims that this second policy is not available. The plaintiff agrees with GEICO's position. Virginia Farm Bureau and Progressive Casualty, on the other hand, claim that the limits of both GEICO policies are available and, as a consequence, this is not an underinsurance case at all. (Herbecq concedes that if both GEICO policies are available, totalling $50,000.00, there would be no occasion for her to look to Virginia Farm Bureau or Progressive Casualty because there would be no underinsurance.)

As counsel argue forcefully and eloquently about the availability or unavailability of the GEICO policies, one party is conspicuously silent. GEICO is not a party to the litigation. Under such circumstances, the court is being asked to decide whether one or both GEICO policies are available (a critical threshold question which will determine whether this is an underinsurance case at all) even though such decision will have no binding effect whatever on GEICO.

The court declines the invitation.

Without GEICO joined as a party, full justice cannot be done nor can the controversy be ended. In fact, with the case in this posture, the controversy could be just beginning. For example, if the court ruled that both GEICO policies are available, it would follow that the court would also rule that there is no underinsurance. But that

ruling would have no effect on GEICO. Thus, in the event Herbecq recovers a substantial judgment against Tack's estate in the personal injury action, and GEICO refuses to pay more than the limits of the policy applicable to the car Tack was driving at the time of the accident, Herbecq will be compelled to litigate this same question with GEICO. If GEICO prevailed in that case, Herbecq could not then go back to the UM carriers since this decision would be res judicata with respect to the issue of under-insurance as between her and the insurance carriers who are parties to this case. Other potential scenarios, equally unappealing, also come to mind.

For the foregoing reason, it is the opinion of the court that GEICO should be joined as a new party to this action so that the court's decision on this crucial issue will not be meaningless or ineffective, and so that the entire controversy can be resolved in this litigation. In accordance with the provisions of Virginia Code § 8.01-7, the plaintiff is directed to join GEICO; and, after GEICO has filed an appropriate response, the plaintiff will bring the case on before the court for further argument.

*3. Whether any underinsurance benefits, if applicable, should be apportioned between the UM insurers.*

The plaintiff contends that underinsurance payments should be apportioned, equally, between the policies of Virginia Farm Bureau and Progressive Casualty.

Virginia Farm Bureau contends that since it is the primary insurer, it is entitled to all offsets for any liability payments made, as a consequence of which it would pay nothing and the entire underinsurance burden would be borne by Progressive Casualty.

Progressive Casualty claims that any underinsurance payment should be equally divided between the UM insurers but Virginia Farm Bureau should be obligated to tender its policy limits first.

The court is of the opinion that nothing in the statute or in the policies leads to any conclusion other than an apportionment. Since each UM policy provides $25,000.00 coverage, Virginia Farm Bureau and Progressive Casualty would be obligated to pay equally any underinsured benefits.

The plaintiff shall join GEICO as party to this action and, upon proper notice, bring the case on for further hearings and disposition consistent with this opinion.

Progressive Casualty asserts that the insurance policy which provides coverage to William Cundiff, another person involved in the accident, must also be considered in determining whether underinsurance is a real issue in this case. Apparently, Progressive Casualty's insured has filed, or attempted to file, a third party motion for judgment against Cundiff in the personal injury case. Herbecq asserts that that effort has been unsuccessful because the third party motion was not properly filed and Cundiff has not been served.

The court expresses no opinion on that matter, since it is not an issue in this case and is not before the court for determination. In any event, a third party motion for judgment filed by a defendant in a personal injury case would not provide an *additional* source of funds to the plaintiff in such action; rather, its purpose would be to permit the defendant to recover over against the third party in the event the plaintiff recovered a judgment against that defendant. Thus, assuming, without deciding, that the above recitation accurately reflects the status of the third party pleadings in the personal injury case, it has no relevance to the issues in this action.

The evidence thus far before the court consists of representations of counsel at the hearing on May 20, 1987, and exhibits tendered without objection. Apparently, all of the parties are of the impression that no one is objecting to the court considering any of the documents offered. Despite this consensus, the preferable approach is for Counsel to stipulate, in writing, so much of the pertinent evidence as may be necessary to a proper final disposition of the case, so that an appropriate record may be made.